BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**NATHAN J. LICHVARCIK**
Assistant United States Attorney
nathan.j.lichvarcik@usdoj.gov
**WILLIAM M. McLAREN, OSB #143836**
Assistant United States Attorney
william.mclaren@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:18-cr-00492-MC-1** |
| **v.** | **UNITED STATES' SENTENCING MEMORANDUM** |
| **JOHN WIDENER JORDAN,** | |
| **Defendant.** | |

      Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.

*United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).

      John Jordan sold his illegal machine gun to a buyer he thought would take it to Mexico. In so doing, he gave his friend, Michael Friesen, a small sum to broker the deal. Once Friesen had everything in place, Jordan met the buyer in a motel room and exchanged the machine gun for cash. Fortunately, the buyer was an undercover agent, and the machine gun landed safely in the hands of ATF.

**United States' Sentencing Memorandum**

For his role in this offense, the United States requests that the court sentence Jordan to 12 months and a day, which balances the serious conduct with mitigating factors, and is appropriately six months less than the 18-month prison sentence this Court gave Michael Friesen.

## I.    <u>BACKGROUND</u>

The facts are accurately set forth in detail in the PSR at paragraphs 14 through 32 and are incorporated herein by reference.

Jordan and his friend, Michael Friesen, attempted to find a buyer for Jordan's machine gun.  A confidential informant (CI) alerted an ATF undercover agent (UCA) of Friesen's search for a buyer and the UCA contacted Friesen.  The UCA purported to be a member of a drug trafficking group in California.  Friesen provided photographs of the gun to the UCA and set the price at $20,000.  The UCA informed Friesen that this was a "street" sale and that the pricing should be much lower; they eventually settled on $3,500 dollars.  Friesen stated that his friend, Jordan, owned this gun and had access to a number of other firearms to sell as well, but he wanted to sell the "illegal ones" first.  PSR at ¶ 19.

Friesen arranged to meet the UCA and sell the gun at a motel room in Prineville, OR.  The UCA arrived first and Friesen came shortly after.  Jordan arrived later carrying a large white cardboard box.  Inside the motel room, Jordan opened the box revealing the model M3A1 .45ACP caliber machine gun depicted below.  It is a fully functional World War II era gun, often referred to as a "grease gun" because of its similarities to grease guns used by mechanics.



In the motel room, Jordan attached the barrel to the gun and showed it to the UCA who examined it and determined it was a machine gun. Jordan told the UCA that the gun was "the real deal" and indicated he had more firearms to sell. Jordan also acknowledged that the UCA could reach him through Friesen. Jordan then took $3,000 from the UCA and left. Once Jordan left, the UCA gave $500 to Friesen for brokering the deal. Later, Jordan met Friesen and paid him $250 for brokering the deal.

Once purchased, law enforcement found that the firearm was not registered to anyone in the National Firearms Registration and Transfer Record. On October 18, 2018, ATF agents arrested Jordan at his job at a landscaping company. In his post-arrest interview, Jordan said he and Friesen found the gun in the garage of his grandparent's former home. Jordan admitted he knew the gun was illegal and that he believed the buyer would take the machine gun to Mexico. He further explained that he had other firearms at his home and that he used to sell firearms with his father until Oregon changed their firearm transfer laws.

On October 17, 2018, a federal grand jury in Eugene returned a three-count indictment charging Jordan and Friesen with conspiracy to possess and transfer a machine gun, and two substantive counts of unlawful possession and transfer of a machine gun. Jordan was released on pretrial supervision on October 19, 2018. PSR at ¶ 72. On April 22, 2019, he tested positive for marijuana and methamphetamine. *Id.* On October 30, 2019, he tested positive again for

**United States' Sentencing Memorandum**                                    **Page 3**

methamphetamine. *Id.* However, since then he has undergone treatment, stayed clean and held employment at a construction company.

On April 24, 2019, Friesen pled guilty to counts one and two of the Indictment (conspiracy and unlawful possession) pursuant to a plea agreement, and the Court sentenced Friesen to 18 months in prison on August 13, 2019. ECF Nos. 32, 34, 59 and 60.

On May 14, 2020, Jordan also pled guilty to the same two counts of the Indictment pursuant to a plea agreement. ECF No. 73-75. For sentencing purposes, the plea agreement contemplates the United States agreeing to a low-end guideline prison sentence and Jordan is allowed to ask for whatever sentence he believes is appropriate.

## II.    ADVISORY GUIDELINE RANGE AND RECOMMENDATION

As correctly set forth in the PSR and plea agreement, Jordan's total offense level is 15. PSR at ¶ 47. This derives from a base offense level of 18 under U.S.S.G. § 2K2.1(a)(5) because the offense involved a machine gun and a three-level decrease for acceptance of responsibility. *Id.* at ¶ 35-47. Because Jordan falls in Criminal History Category I, his correctly calculated advisory guideline range is 18 to 24 months. PSR at ¶ 79.

A 12-month and a day prison sentence is appropriate and necessary under the § 3553(a) factors, and is proportional to the 18-month prison sentence this Court imposed on Friesen. On the aggravating side, Jordan sold and transferred an inherently dangerous weapon to someone who purportedly worked in the drug world and Jordan thought the buyer would take the machine gun to Mexico. Machine guns evince "murderously effective firepower . . . allowing a shooter to kill dozens of people within a matter of seconds." *Henry*, 688 F.3d at 640 (citations omitted). In selling such a weapon, Jordan did not care about the consequences of the gun entering the illegal stream of commerce. And he used his friend, Friesen, to negotiate the sale, paying Friesen a paltry brokerage fee while Jordan made off with the lion's share of the deal.

**United States' Sentencing Memorandum**                                                    **Page 4**

On the mitigating side, Jordan suffers from substance abuse, migraines, PTSD, and the effects of old concussions stemming from a difficult childhood with physical abuse.  PSR at ¶ 61, 66-72.  While he had several setbacks with controlled substances during pretrial release, to his credit he engaged in outpatient substance abuse treatment with no violations since October 30, 2019 and has maintained employment since April of this year– which is remarkably better than how Friesen conducted himself while on pretrial release.

Upon consideration of these factors, the United States believes that, despite that it was Jordan's gun and he made the most money off the deal, Jordan should be sentenced slightly lower than the 18-month sentence Friesen received.  Twelve months and a day is sufficient, but not greater than necessary to account for the 18 U.S.C. § 3553 factors.  At bottom, selling a fully automatic weapon to someone he thought would take it to Mexico is serious conduct that should be met with prison time.

### III.    CONCLUSION

For these reasons, the United States requests that the Court sentence Jordan to 12 months and a day in prison, three years supervised release, and a $200 fee assessment.

Dated: September 9, 2020.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

s/ Nathan J. Lichvarcik
NATHAN J. LICHVARCIK
Assistant United States Attorney

s/ William M. McLaren
WILLIAM M. McLAREN
Assistant United States Attorney

**United States' Sentencing Memorandum**                                      **Page 5**